# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOT SYSTEMS, LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SAN DIEGO ASSOCIATION OF GOVERNMENTS, a California public agency; and NEOLOGY, INC., a Delaware corporation,<br><br>Defendants. | Case No.:  26-cv-00738-H-BJW<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. No. 12.] |

On April 20, 2026, Defendants San Diego Association of Governments and Neology, Inc. filed a motion to dismiss Plaintiff Hot Systems, LLC's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  (Doc. No. 12.)  On May 21, 2026, Plaintiff filed a response in opposition to Defendants' motion to dismiss.  (Doc. No. 19.)  On May 29, 2026, Plaintiff filed an amended response in opposition.  (Doc. No. 22.)  On June 1, 2026, the Court took the motion to dismiss under submission.  (Doc. No. 23.)  On June 3, 2026, Defendants filed their reply.  (Doc. No. 24.)  For the reasons below, the Court denies Defendants' motion to dismiss.

/ / /

/ / /

**Background**

The following factual background is taken from the allegations in Plaintiff's complaint.  Plaintiff is the legal owner by assignment of U.S. Patent Nos. 10,810,578 ("the '578 patent") and 11,270,182 ("the '182 patent) (collectively, "the asserted patents").  (Doc. No. 1, Compl. ¶ 3.)  Plaintiff's founder and CEO is the inventor of switchable toll transponder technology, including the asserted patents.  (Id. ¶¶ 2–3.)  Plaintiff alleges that Defendants have infringed or have contributed to the infringement of the asserted patents by manufacturing, advertising, selling, and offering to sell switchable toll transponder products and/or services, including the FasTrak Flex.  (Id. ¶¶ 2, 18–20, 37, 49, 59.)

The asserted patents are related, have nearly identical specifications, and are both entitled "RFID Financial Device Including Mechanical Switch."  U.S. Patent No. 10,810,578, at [54] (filed Oct. 20, 2020); U.S. Patent No. 11,270,182, at [54] (filed Mar. 8, 2022).  The asserted patents generally relate to "the field of communication devices including radio frequency identification (RFID) tags."  '182 Patent col. 2 ll. 20–21.

The specification explains:

> RFID tags are typically small, flexible, and low profile devices that can be affixed to items for electronic tracking and information storage purposes. An RFID tag can be read by an RFID reader when the RFID tag is brought within a certain vicinity of the reader while the reader is broadcasting an appropriate signal. . . .

> RFID tags generate a return radio frequency signal that may include an encoded copy of information stored within the RFID tag. As RFID tags achieve more wide spread use they will become ubiquitous on forms of tagging, labeling, identification, and be included in personal and business effects, such as passports, driver's licenses, keys, cell phones, credit cards, PDAs, and so forth.  For example, an RFID tag may be incorporated in a driver's license to store personal information about the licensee or in a product label to track inventory.

> A problem with using RFID tags to store security, confidential and/or personal information is that an RFID reader can read any RFID tags that pass within its range.  Even if data is encrypted, this creates a possibility of unauthorized access to the personal data and other information stored in the RFID tag.

26-cv-00738-H-BJW

Id. at col. 2 ll. 25–59.

The asserted patents attempt to solve that problem by disclosing "a remotely powered RFID (radio frequency identity) tag having an electronically controlled switch." Id. at col. 4 ll. 22–24.  In some embodiments of the invention, "when the switch is in an off state, the RFID tag will not transmit and when the switch is in an on state the RFID tag will transmit in response to an RF (radio frequency) signal.  In some embodiments, the switch includes multiple on states in which different information or signals are transmitted responsive to the state of the switch."  Id. at col. 4 ll. 25–31.

As an exemplary claim, independent claim 1 of the '182 patent recites:

A radio frequency identification (RFID) system comprising:

an antenna;

a switchable RFID tag configured to operate in both a first ON state and a second ON state, and to transmit different information in the first ON state relative to the second ON state; and

a mechanical switch configured to change the RFID tag from the first ON state to the second ON state, wherein the antenna is configured to transmit the different information via a first radio frequency (RF) signal in the first ON state and a second RF signal in the second ON state, wherein the information transmitted in the first ON state indicates that the RFID tag is in the first ON state.

Id. at col. 33 ll. 38–52.

By the present motion, Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's complaint for failure to state a claim.  (Doc. No. 12-1 at 6–7.)  Specifically, Defendants assert that Plaintiff fails to state claims for patent infringement against them because all the asserted claims in the asserted patents are directed to patent ineligible subject matter and, thus, are invalid under 35 U.S.C. § 101.  (Id.)

**Discussion**

## I.   Legal Standards for a Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has

failed to state a claim upon which relief can be granted. See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011) (citing Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading that states a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of this pleading requirement is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008); see Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must "'accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff.'" Los Angeles Lakers, 869 F.3d at 800 (quoting AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012)). But a court need not accept "legal conclusions" as true. Iqbal, 556 U.S. at 678. "Further, it is improper for a court to assume the claimant "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

26-cv-00738-H-BJW

In addition, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice.  See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).  If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend.  See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010).

## II.    Analysis

Defendants argue that Plaintiff's claims for patent infringement should be dismissed because all of the asserted claims are directed to patent-ineligible abstract ideas and are, thus, invalid under 35 U.S.C. § 101.  (Doc. No. 12-1 at 6–7, 16–27.)  Further, Defendants contend that independent claims 1 and 14 of the '182 patent should be used as representative claims to assess the validity of the asserted claims under § 101.  (See id. at 12–16.)

In response, Plaintiff contends that the challenged claims are not directed to an abstract idea; rather, they are directed to a specific and concrete technology improvement: the integration of a mechanical switch into a RFID toll transponder.  (Doc. No. 22 at 1, 10–17.)  Plaintiff also challenges Defendants' attempt to use two representative claims to challenge the validity of all of the asserted claims.  (See id. at 8–10.)

A.    Legal Standards Governing Patent Eligibility Under 35 U.S.C. § 101

Section 101 of the Patent Act defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101.  The Supreme Court has "'long held that this provision contains an important implicit exception[:] Laws of nature, natural phenomena, and abstract ideas are not patentable.'"  Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 569 U.S. 576, 589 (2013) (quoting Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc., 566 U.S. 66, 70 (2012)).  "This exception reflects the concern that patent law not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity."  PersonalWeb Techs. LLC v. Google LLC, 8 F.4th 1310, 1314 (Fed.

26-cv-00738-H-BJW

Cir. 2021) (internal quotation marks omitted) (quoting Alice Corp. v. CLS Bank Int'l, 573 U.S. 208, 216 (2014)); see also CareDx, Inc. v. Natera, Inc., 40 F.4th 1371, 1376 (Fed. Cir. 2022) ("These exceptions exist because monopolizing the basic tools of scientific work 'might tend to impede innovation more than it would tend to promote it.'" (quoting Mayo, 566 U.S. at 71)).

"The Supreme Court has established a two-step framework for evaluating patent eligibility under § 101." Int'l Bus. Machines Corp. v. Zillow Grp., Inc., 50 F.4th 1371, 1377 (Fed. Cir. 2022) (citing Alice, 573 U.S. at 217). Under step one, the court "determine[s] whether the claim is 'directed to' a 'patent-ineligible concept,' such as an abstract idea." Coop. Ent., Inc. v. Kollective Tech., Inc., 50 F.4th 127, 130 (Fed. Cir. 2022) (quoting Alice, 573 U.S. at 217). If so, the court proceeds to step two and "examine[s] 'the elements of the claim to determine whether it contains an "inventive concept" sufficient to "transform" the claimed abstract idea into a patent-eligible application.'" Id. (quoting Alice, 573 U.S. at 221). Specifically, the court determines "whether the claim elements, individually and as an ordered combination, contain an inventive concept, which is more than merely implementing an abstract idea using 'well-understood, routine, [and] conventional activities previously known to the industry.'" Id. (quoting Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014)).

"Patent eligibility is a question of law that may involve underlying questions of fact. PersonalWeb, 8 F.4th at 1314; see Berkheimer v. HP Inc., 881 F.3d 1360, 1365 (Fed. Cir. 2018). "Thus, patent eligibility may be resolved at the Rule 12 stage only if there are no plausible factual disputes after drawing all reasonable inferences from the intrinsic and Rule 12 record in favor of the non-movant." Coop. Ent., 50 F.4th at 130 (collecting cases). "But 'not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry.' Indeed, that inquiry 'may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive

26-cv-00738-H-BJW

standards of law.'" PersonalWeb, 8 F.4th at 1314 (citations omitted).

The party challenging the validity of the asserted patents bears the burden of proof under the § 101 two-step framework. See Illumina, Inc. v. Ariosa Diagnostics, Inc., 967 F.3d 1319, 1328 (Fed. Cir. 2020); see also Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. 91, 95 (2011) ("'[T]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.'" (quoting 35 U.S.C. § 282)). Further, any fact pertinent to the § 101 eligibility analysis must be proven by clear and convincing evidence. See Berkheimer, 881 F.3d at 1368; see also Microsoft, 564 U.S. at 95 (holding that § 282 requires that an invalidity defense "be proved by clear and convincing evidence").

B.    Step One of the § 101 Eligibility Analysis

The Court begins its analysis of Defendants' challenge to the validity of the asserted claims of the patents by analyzing step one of the § 101 two-step inquiry. Under step one, the court determines whether the asserted claims are "'directed to' a 'patent-ineligible concept,' such as an abstract idea." Coop. Ent., 50 F.4th at 130 (quoting Alice, 573 U.S. at 217). The Federal Circuit has "'approached the Step 1 directed to inquiry by asking what the patent asserts to be the focus of the claimed advance over the prior art. In conducting that inquiry, [courts] must focus on the language of the asserted claims themselves, considered in light of the specification.'" Yu v. Apple Inc., 1 F.4th 1040, 1043 (Fed. Cir. 2021) (cleaned up) (quoting TecSec, Inc. v. Adobe Inc., 978 F.3d 1278, 1292 (Fed. Cir. 2020)); see also CardioNet, LLC v. InfoBionic, Inc, 955 F.3d 1358, 1372–73 (Fed. Cir. 2020) ("In determining what the claims are directed to and whether they are directed to an abstract idea, a court may well consult the plain claim language, written description, and prosecution history."). The step one inquiry "presents a legal question that can be answered based on the intrinsic evidence." CardioNet, 955 F.3d at 1372.

The Federal Circuit has cautioned that the step one "directed to" inquiry does not "simply ask whether the claims involve a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon—after all, they take place in the physical world."

26-cv-00738-H-BJW

Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1335 (Fed. Cir. 2016).  Thus, courts must "be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims."  CardioNet, 955 F.3d at 1371; see In re TLI Commc'ns LLC Pat. Litig., 823 F.3d 607, 611 (Fed. Cir. 2016).  "Rather, the 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'"  Enfish, 822 F.3d at 1335 (quoting Internet Patents Corp. v. Active Network, Inc., 790 F.3d 1343, 1346 (Fed. Cir. 2015)).  "If the focus of the claim is a specific and concrete technological advance, for example an improvement to a technological process or in the underlying operation of a machine, [the court's] inquiry ends and the claim is eligible."  Adasa Inc. v. Avery Dennison Corp., 55 F.4th 900, 908 (Fed. Cir. 2022).

Defendants assert that the representative claims are directed to the abstract idea of "processing and communicating selected options based on a user's selection, such as for a financial transaction."  (Doc. No. 12-1 at 1.)  A review of the intrinsic record for the asserted patents shows that Defendants are incorrect.  Instead, the asserted patents are directed to a switchable RFID tag, which is a specific and concrete technological advance.

The Federal Circuit has explained that a patent's specification is often helpful in illuminating what a claim is directed to and what is the claimed advance over the prior art.  Chamberlain Grp., Inc. v. Techtronic Indus. Co., 935 F.3d 1341, 1346 (Fed. Cir. 2019).  The asserted patents' specification explains that a problem with using prior art RFID tags to store confidential or personal information "is that an RFID reader can read any RFID tags that pass within its range.  Even if data is encrypted, this creates a possibility of unauthorized access to the personal data and other information stored in the RFID tag."  '182 Patent col. 2 ll. 54–59.  The asserted patents aim to solve this problem with the prior art by disclosing a switchable RFID tag.  See id. at col. 4 l. 21 to col. 5 l. 36; see also id. at col. 9 ll. 62–64 (explaining that prior art RFID tags did not include a switch), at [54] ("RFID Financial Device Including Mechanical Switch").  Thus, the specification of the asserted patents illustrates that the claimed inventions are directed to a switchable RFID tag device.

26-cv-00738-H-BJW

That the claims are directed to a switchable RFID tag device is also supported by a review of the claim language.  Independent claim 1 of the '182 Patent recites a RFID systems comprising "a switchable RFID" and "a mechanical switch."  Id. at col. 33 ll. 38–52.  Similarly, independent claim 14 of the '182 Patent recites a method, including the step of "setting a mechanical switch" where the "switch" is configured to selected between a plurality of ON states of a RFID tag.  Id. at col. 34 ll. 18–24.  As such, the intrinsic record of the asserted patents makes clear that the challenged claims are directed to a switchable RFID tag.  Further, a switchable RFID tag is a specific and concrete technological advance to a mechanical device – not an abstract idea.  See Adasa, 55 F.4th at 908 (explaining that when the claims focus "on a specific and concrete technological advance," they are not directed to a patent-ineligible concept).

Defendants contend that the asserted patents do not claim any improvements or advancements to RFID tags. (Doc. No. 12-1 at 6–7, 18, 25.)  That is incorrect.  The intrinsic record explains that prior art RFIDs did not include switches, and including a switch in a RFID tag helps alleviate the problem in the prior art of possible unauthorized access to confidential and/or personal data.[1]  See '182 Patent col. 2 ll. 54–59, col. 9 ll. 62–64.  Thus, a switchable RFID tag is a concrete improvement/advancement in RFID tag devices, and the way they operate.

Further, all of the case law cited by Defendants is easily distinguishable from the asserted patents in this case.  (See Doc. No. 12-1 at 23–24.)  In Smart Sys. Innovations, LLC v. Chicago Transit Auth., the challenged claims were directed to the formation of financial transactions and not any specific concrete or technology advance.  873 F.3d 1364,

---

[1]    In the complaint, Plaintiff alleges that the claimed inventions include "a variety of improvements related to the security and versatility of RFID identification and payment device."  (Doc. No. 1, Compl. ¶ 14.)  In its opposition, Plaintiff contends that the claim switchable RFID tags also improve upon the prior art by providing "the ability to charge different amounts based on the occupancy of the vehicle which changes traffic patterns."  (Doc. No. 22 at 11.)

26-cv-00738-H-BJW

1371 (Fed. Cir. 2017).  The Federal Circuit noted that the asserted claims were not "directed to a new type of bankcard, turnstile, or database."  Id. at 1372.  Similarly, in ChargePoint, Inc. v. SemaConnect, Inc., the Federal Circuit noted that the patent's specification never suggested "the charging station itself is improved from a technical perspective, or that it would operate differently than it otherwise could."  920 F.3d 759, 768 (Fed. Cir. 2019).  In W. View Rsch., LLC v. Bayerische Motoren Werke AG, the district court found that the claims were directed to an abstract idea, in part, because "[t]he physical components of the claims, such as an antenna or interrogator apparatus, a radio frequency device, a processing apparatus, a personal electronic device are generic descriptions of well-known components used to carry out th[e] abstract function."  226 F. Supp. 3d 1071, 1078 (S.D. Cal. 2016) ("the claims recite known RFID tag and reader systems").  In contrast to those cases, the asserted patents in this case are directed to a new type of physical RFID tag device – one with a switch – that operates differently from prior art RFID tags in light of the inclusion of that switch in order to achieve a better result than the prior art – better protection against unauthorized access to confidential and/or personal data.

In Chamberlain Grp., Inc. v. Techtronic Indus. Co., 935 F.3d 1341, 1347 (Fed. Cir. 2019), the "only described difference between the prior art movable barrier operator systems and the claimed movable barrier operator system was that the status information about the system is communicated wirelessly."  In contrast, here, the difference between challenged claims and the prior art RFID tags is the inclusion of a switch – a concrete and tangible advancement to the device.

In sum, the challenged claims of the asserted patents are directed to a specific and concrete technological advance – a switchable RFID tag.  As such, the claims are not directed to an abstract idea.  See Adasa, 55 F.4th at 908.  Further, because the challenged claims are not directed to a patent-ineligible concept under step one of the § 101 inquiry, "the claims satisfy § 101 and [the Court] need not proceed to the second step.  The claims are patent eligible under § 101."  CardioNet, 955 F.3d at 1368 (citation omitted); see Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc., 827 F.3d 1042, 1047 (Fed. Cir. 2016) ("If the answer

26-cv-00738-H-BJW

[to the step one inquiry] is no, the inquiry is over: the claim falls within the ambit of § 101.").

### C.    Alice Step Two

Although the Court need not address step two of the Alice test, see CardioNet, 955 F.3d at 1368, the challenged claims are also valid under step two of the Alice test.  Under step two, the Court asks "whether the claims do significantly more than simply describe the abstract method and thus transform the abstract idea into patentable subject matter." Affinity Labs, 838 F.3d at 1262 (cleaned up).  At step two, the court determines "whether the claim elements, individually and as an ordered combination, contain an inventive concept, which is more than merely implementing an abstract idea using 'well-understood, routine, [and] conventional activities previously known to the industry.'"  Coop. Ent., 50 F.4th at 130.

Even if the challenged claims were directed to an abstract idea, the claims do not merely implement an abstract idea using well understood, routine, and conventional activities.  The specification of the asserted patents explains that switchable RFID tags were not known in the prior art.  '182 Patent col. 9 ll. 62–64.  Thus, at the time of the invention, use of a switchable RFID tags was not well understood, routine, or conventional activity.[2]  As such, step two of the Alice test also demonstrates that the challenged claims

---

[2]    Defendants contend that the switch that is added the claimed switchable RFID tags is "an off-the-shelf mechanical switch." ECF No. 12-1 at 7.  Defendants have not provided the Court with any evidence showing this is true.  Cf Berkheimer v. HP Inc., 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact.").  Nor could they because a court generally cannot consider matters beyond the pleadings in deciding a motion to dismiss.  See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018) ("Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Am. Contractors Indem. Co. v. United States, 570 F.3d 1373, 1376 (Fed. Cir. 2009) ("On a motion to dismiss, the court generally may not consider materials outside the pleadings.").  Further, even if a mechanical switch is a conventional piece, the Federal Circuit has explained: "'[A]n

26-cv-00738-H-BJW

are patent eligible under § 101.

In sum, Defendants have failed to demonstrate that the claims of the asserted patents are invalid under § 101. As a result, the Court denies Defendants' motion to dismiss.

### Conclusion

For the reasons above, the Court denies Defendants' Rule 12(b)(6) motion to dismiss Plaintiff's complaint. Defendants must file their answers to Plaintiff's complaint **within fourteen (14) days from the date this order is filed**. See Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED.**

DATED: June 15, 2026

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.'" Realtime Adaptive Streaming L.L.C. v. Sling TV, L.L.C., 113 F.4th 1348, 1357 (Fed. Cir. 2024).

26-cv-00738-H-BJW